894 F.2d 804
 1990 A.M.C. 2308, 29 Fed. R. Evid. Serv. 1033
 Jacqueline ANDERSON, Martha Brower, Mary E. Miller, and
Marvie C. Willsey, Plaintiffs-Appellees,
Plaintiffs-Appellees, Cross Appellants,
v.
WHITTAKER CORPORATION, Defendant-Appellant,
Defendant-Appellant, Cross Appellee, Defendant-Appellee,
Claude C. Boles, Third Party Defendant-Appellant,
Bay Haven Marina, Inc.,
Ottawa Beach Marina, Inc., Third Party Defendants-Appellees.
 Nos. 88-1898, 88-1900, and 88-1901.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 8, 1989.
Decided Jan. 18, 1990.
 
 John L. Cote (argued), Raymond J. Foresman, Jr., Curtis R. Hadley, Willingham & Cote, East Lansing, Mich., for plaintiffs-appellees.
 Richard B. Baxter (argued), Robert N. Hammond, Dykema, Gossett, Spencer, Goodnow & Trigg, Joel E. Krissoff, Farr & Oosterhouse, Grand Rapids, Mich., for Whitaker Corp. and Trojan Yacht.
 Bruce P. Rissi (argued), Smith, Haughey, Rice & Roegge, Grand Rapids, Mich., for Bay Haven Marina, Inc.
 Gary P. Bartosiewicz, Piatt, Bartosiewicz & Tiderington, Kalamazoo, Mich., for Ottawa Beach Marina, Inc.
 Charles E. Barbieri (argued), John L. Collins, Foster, Swift, Collins & Coey, Lansing, Mich., for Claude C. Boles.
 Before KENNEDY and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 This case involves a general maritime action for wrongful death arising out of the sinking of a boat known as the Sea Mar III ("Sea Mar") in Lake Michigan. The manufacturer of the boat, the Whittaker Corporation, appeals the District Court's finding that the negligent design of the boat was a proximate cause of the sinking. It also appeals the award of damages for pre-death terror, fright and shock in the absence of eyewitness evidence regarding the deaths as well as certain evidentiary issues. The owner of the boat appeals from the finding that his negligence contributed to the sinking. He also appeals the refusal of the court to limit his liability pursuant to 46 U.S.C.App. Sec. 183. The decedents appeal the denial of prejudgment interest and denial of parents' claims for loss of society of adult, sons upon whom the parents are not dependent. All of the parties appeal various damage issues. We AFFIRM in part and REVERSE in part.
 
 
 2
 Plaintiffs commenced this products liability action in the United States District Court for the Western District of Michigan, Southern Division, against the manufacturer of the boat based on alleged defects. Specifically, plaintiffs' action against defendant Whittaker included claims of negligence and breach of implied warranties in that the boat had air scoops located on both sides of the hull at the stern that were negligently designed. Plaintiffs alleged that this defect permitted substantial amounts of water to enter and accumulate in the bilge, making the boat unreasonably dangerous.
 
 
 3
 During 1978 and 1979, all 1974 model Trojan F-32's, including the Sea Mar, were the subject of a manufacturer's recall and retrofit campaign in the course of which the manufacturer sent out letters stating that the boats' air vents, as designed, allowed water to enter and accumulate in the stern of the boat. The recall notice stated that sustained operation under certain conditions of wave height, direction, attitude, speed and other variables could allow water to enter through the forward-facing aft vents in sufficient quantities to "disable the engines and eventually swamp the boat." The letters were sent only to authorized Trojan dealers and to first purchasers and subsequent purchasers known to the manufacturer. Because defendant Whittaker ultimately conceded that the boat was defective, the principal factual issue at the liability trial was whether the defect was a proximate cause of plaintiffs' injuries.
 
 
 4
 Defendant Whittaker filed a third-party complaint in admiralty pursuant to Fed.R.Civ.P. 14(c), asserting liability against Claude Boles, the owner of the Sea Mar, as well as Bay Haven Marina and Ottawa Beach Marina, which were alleged to be liable as employers of some of the decedents.[1]
 
 
 5
 A nonjury trial was held before the District Court. The court bifurcated the proceedings and tried the issues of liability and damages separately. The court found that plaintiffs had met their burden of proving proximate causation and thus found defendant Whittaker liable. 692 F.Supp. 734 (W.D.Mich.1987). The court also concluded that Boles failed to exercise reasonable care by turning the boat over to decedents without advising them of the latent defects in the boat of which he had knowledge. The court found such negligence to be a proximate cause of decedents' injuries. The court found Bay Haven Marina and Ottawa Beach Marina not liable.
 
 
 6
 The court reduced plaintiffs' recovery, finding that decedents were negligent in setting out on the trip without making specific inquiry into the weather conditions before departing. The court found each plaintiff to be 20 percent negligent, Whittaker to be 55 percent negligent, and Boles to be 25 percent negligent, and apportioned damages accordingly.
 
 
 7
 The court awarded damages for loss of society to two of the plaintiffs, those who were spouses of a decedent. 692 F.Supp. 764. The court found that the non-dependent parents of the other two decedents, who left no surviving spouses or children, could not recover damages for loss of society. The court awarded damages for pre-death terror, fright and shock to all of the plaintiffs. 692 F.Supp. 764.
 
 
 8
 Plaintiffs also sought prejudgment interest from the date of decedents' deaths on all damages awarded other than the damages that compensated for loss of future earnings. The District Court, without determining whether the rule in this circuit provides for prejudgment interest in a general maritime case, ruled that plaintiffs were not entitled to prejudgment interest.
 
 
 9
 Thus, there are numerous issues before us on appeal. Plaintiffs argue that they are entitled to prejudgment interest on their award from the date of decedents' deaths. Those plaintiffs who are the non-dependent parents of decedents argue that they should be able to recover for loss of society. Defendants challenge the District Court's findings regarding proximate cause, and make several challenges regarding the admissibility of certain evidence. Defendants also argue that the court below erred in awarding damages for pre-death terror, fright and shock. Defendant Boles argues that the court erred in finding him liable as an owner of the boat. He also argues that his liability should have been limited pursuant to 46 U.S.C.App. Sec. 183. Finally, Boles argues that the trial court erred in calculating a recovery for lost future earnings.
 
 I. Prejudgment Interest
 
 10
 As noted above, the District Court denied plaintiffs' request that prejudgment interest be applied to their award from the date of decedents' deaths. The court did not find it necessary to determine whether prejudgment interest was available as a matter of law in the case before it.[2] Rather, the court found that even if prejudgment interest were available, the circumstances of the present case weighed strongly against such an assessment on the award:
 
 
 11
 In particular, the Court notes the age of this case, which is not due to the actions of any one party, but to a combination of factors including the complexity of the issues, the myriad of legal questions that have been raised, and the scope of the discovery that was conducted. It also notes that crucial factual issues including causation, apportionment of fault, and the extent of damages have been zealously disputed, all the way down the line. To say that this case is one in which very close questions, both legal and factual, have been involved is a gross understatement; resolution of the issues posed here has been an extraordinarily complex process for all involved. Under these circumstances the Court finds that an award of prejudgment interest would be patently unfair.
 
 
 12
 In those cases where prejudgment interest is available, the trial judge has discretion to deny such an award where there are " 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay prejudgment interest." Oglebay Norton Co. v. CSX Corp., 788 F.2d 361, 368 (6th Cir.), cert. denied, 479 U.S. 849, 107 S.Ct. 173, 93 L.Ed.2d 109 (1986) (quoting Noritake Co. v. M/V Hellenic Champion, 627 F.2d 724, 728 (5th Cir.1980)). In a later case, the Fifth Circuit listed several situations where "peculiar circumstances" exist:
 
 
 13
 Peculiar circumstances may be found where plaintiff improperly delayed resolution of the action, where a genuine dispute over a good faith claim exists in a mutual fault setting, where some equitable doctrine cautions against the award, or where the damages award was substantially less than the amount claimed by plaintiff.
 
 
 14
 Reeled Tubing, Inc. v. M/V Chad G, 794 F.2d 1026, 1028 (5th Cir.1986) (emphasis added).
 
 
 15
 The present case arguably involves a "genuine dispute over a good faith claim ... in a mutual fault setting." Id. This seems to be the basis upon which the District Court based its decision to deny plaintiffs' request for prejudgment interest. Because we question whether the "mutual fault" rationale remains a viable basis on which to rest a denial of an award of prejudgment interest, we find it necessary to reach the issue of whether prejudgment interest is available in this case.
 
 
 16
 With respect to Jones Act cases, this Court has noted that "[i]n a seaman's action to recover for personal injury or death, the general rule is that interest is awarded 'from the date that the damages have been judicially determined,' and not prejudgment interest from the date of injury." Oglebay, 788 F.2d at 367 (quoting Cleveland Tankers, Inc. v. Tierney, 169 F.2d 622, 626 (6th Cir.1948)). By contrast, in admiralty cases where recovery for property damage is sought, prejudgment interest is awarded absent "peculiar circumstances." Oglebay, 788 F.2d at 367-68. The law is not as clear with respect to the availability of prejudgment interest in cases involving Moragne[3] claims rather than Jones Act claims. However, this Court has indicated that despite the prohibition of prejudgment interest in Jones Act cases, a seaman may be entitled to interest on an unseaworthiness claim under the court's general admiralty jurisdiction.[4] In Peterson v. Chesapeake & Ohio Ry. Co., 784 F.2d 732, 740 (6th Cir.1986), this Court affirmed the denial of an award of prejudgment interest in a case involving both Jones Act and general maritime personal injury claims. The basis for the Court's decision was that "[w]here a general maritime claim is tried to a jury, the grant or denial of prejudgment interest must be submitted to the jury." Id. The prejudgment claim had not been submitted to the jury. The seaman sought to have the Court award interest on the jury's verdict. The Court noted, however, that:
 
 
 17
 Even if prejudgment interest could be awarded by the court after the unseaworthiness claim is submitted to the jury, such an award would not be warranted in this case. The jury's verdict does not disclose whether the damage award was based upon the Jones Act or upon the unseaworthiness claim.[5] Where it is impossible to determine if the damages awarded relate only to the unseaworthiness claim, prejudgment interest will not be awarded at all.
 
 
 18
 Id. at 741 (footnote added).
 
 
 19
 Both this language and the Court's statement that the grant or denial of prejudgment interest must be submitted to the jury where a general maritime claim is tried to a jury, indicate that prejudgment interest is available in a general maritime claim for personal injury or death. Therefore, we find that prejudgment interest is available in the present wrongful death general maritime action.[6]
 
 
 20
 Although the District Court did not find it necessary to decide the issue of the availability of prejudgment interest in this case, the court nonetheless found that if prejudgment interest were available at all, it was not appropriate because of the "peculiar circumstances" of this case. As noted above, the peculiar circumstances upon which the District Court based its decision seem to have been those of mutual fault.
 
 
 21
 We must evaluate the District Court's denial of prejudgment interest using an abuse of discretion standard of review. Oglebay, 788 F.2d at 368. The law is clear that " '[d]iscretion to deny prejudgment interest is created only when there are "peculiar circumstances" that would make it inequitable for the losing party to be forced to pay prejudgment interest.' " Phillips Petroleum Co. v. Stokes Oil Co., 863 F.2d 1250, 1258 (6th Cir.1988) (quoting Noritake, 627 F.2d at 728).
 
 
 22
 Phillips is this Court's most recent statement on the availability of prejudgment interest. There, the court affirmed the grant of prejudgment interest to a prevailing party because none of the three conditions enumerated in Alkmeon Naviera, S.A. v. M/V Marina L, 633 F.2d 789 (9th Cir.1980), were present. The three conditions set forth were: when the prevailing party "(1) caused undue delay, (2) claimed damages greater than actual loss and suffered no deprivation of use, or (3) made a bad faith claim." Phillips, 863 F.2d at 1258 (citing Alkmeon Naviera, 633 F.2d 789). Significantly, the Phillips Court did not mention mutual fault as a peculiar circumstance although the facts reveal that the case involved mutual fault. Id. at 1254-55. The Alkmeon Naviera case upon which the Court so heavily relied also did not include mutual fault as a peculiar circumstance warranting the denial of prejudgment interest. The Alkmeon Naviera court noted:
 
 
 23
 Mutual fault is also occasionally listed as a reason for denying prejudgment interest. The Supreme Court, however, has long approved prejudgment interest in mutual fault cases. See The Manitoba, 122 U.S. 97, 7 S.Ct. 1158, 30 L.Ed. 1095 (1887). Further, courts have denied prejudgment interest in mutual fault cases in order to mitigate the harsh effects of the old equal division of damages rule. These courts recognized that, in cases of slight negligence, prejudgment interest actually penalized the less culpable party. This party, if prejudgment interest were imposed, would pay interest on one-half of the other party's damages, rather than interest on the lesser proportion of damages caused. Further, the more negligent party would receive more than his proper share. The unfairness of this penalty to the paying party, along with its concomitant over-compensation, was thought to exceed any compensation running to the receiving party, and interest was accordingly denied.
 
 
 24
 The equal division of damages rule, however, [has been abrogated]. Thus, denial of prejudgment interest on mutual fault grounds would seem no longer necessary, since distortions in compensation can no longer occur....
 
 
 25
 Finally, under any rule allowing apportionment of liability, denying prejudgment interest on the basis of mutual fault would seem to penalize a party twice for the same mistake.
 
 
 26
 Alkmeon Naviera, 633 F.2d at 798 n. 12 (citations omitted).
 
 
 27
 This Court's reliance on Alkmeon Naviera would seem to indicate that the Court no longer considers mutual fault a peculiar circumstance warranting the denial of prejudgment interest. At the very least, for the reasons set forth in Alkmeon Naviera, mutual fault should not justify the denial of prejudgment interest where it is otherwise available.
 
 
 28
 None of the three peculiar circumstances enumerated in Phillips exist in the present case. Plaintiffs in the present case did not cause undue delay. They did not claim damages greater than actual loss and they did in fact suffer deprivation of use. Finally, plaintiffs did not make a bad faith claim. In addition to these three factors, the Alkmeon Naviera court also asserted that a peculiar circumstance may exist "where the parties have excluded prejudgment interest in their stipulation of damages," and noted that "[o]ther circuits have considered uncertainty regarding claims or damages as 'peculiar circumstances.' " Alkmeon Naviera, 633 F.2d at 798. The Phillips Court, however, failed to consider this uncertainty as a peculiar circumstance. Furthermore, those courts that have considered uncertainty regarding claims or damages to be peculiar circumstances have done so only where such uncertainty existed in conjunction with mutual fault. Reeled Tubing, 794 F.2d at 1028 ("Peculiar circumstances may be found ... where a genuine dispute over a good faith claim exists in a mutual fault setting...."); Sinclair Ref. Co. v. SS Green Island, 426 F.2d 260, 262 (5th Cir.1970). Because we have found that mutual fault is no longer a viable peculiar circumstance upon which to base a denial of prejudgment interest, we necessarily find that mutual fault coupled with uncertainty regarding claims or damages is not a peculiar circumstance either.[7]
 
 
 29
 Having found no peculiar circumstance to support the District Court's denial of prejudgment interest, we find that the court erred in denying this item of damage. Accordingly, we REVERSE the District Court's denial of plaintiffs' request for prejudgment interest on their awards.II. Recovery for Loss of Society by Non-dependent Parents
 
 
 30
 Plaintiffs next argue that the trial court erred in finding that non-dependent parents of a decedent may not recover damages for loss of society. The District Court limited loss of society damages to dependent survivors of decedents, relying upon the "twin aims" of maritime law as expressed in Sistrunk v. Circle Bar Drilling Co., 770 F.2d 455, 458 (5th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986) (citing Moragne v. States Marine Lines, Inc., 398 U.S. 375, 386-88, 401, 403, 90 S.Ct. 1772, 1780-81, 1788, 1789, 26 L.Ed.2d 339 (1970))--those of achieving uniformity in the exercise of admiralty jurisdiction and of providing special solicitude to seamen.
 
 
 31
 The Fifth Circuit has recently decided this same issue, reasoning similarly to the District Court in the present case. See Miles v. Melrose, 882 F.2d 976 (5th Cir.1989). The Fifth Circuit held that non-dependent parents of a seaman may not recover for loss of society, even where the seaman was not survived by spouse or child. The court concluded that a denial of recovery would lend more uniformity to admiralty jurisdiction than would allowing recovery, because the Death on the High Seas Act, 46 U.S.C.App. Sec. 761 et seq. (DOHSA) limits recovery to pecuniary losses and survivors cannot recover for loss of society under the Jones Act. The court further found that the provision for the special solicitude of seamen would not be furthered in any meaningful way by allowing non-dependent parents to recover for loss of society. The court quoted its own opinion in Sistrunk, 770 F.2d 455, to explain its findings:
 
 
 32
 To the extent that the purpose of admiralty's special solicitude to the survivors of seamen is to provide for their financial support, the special solicitude aim of admiralty has no relevance in this case. The parents in this case were not dependent on their sons.
 
 
 33
 If a purpose of the solicitude is to provide the survivors peace of mind both before a seaman undertakes to venture upon hazardous and unpredictable sea voyages and after the death of the seaman, admiralty's special solicitude does not automatically mean that the parents in this case should recover. As stated above, the parents could not recover if the seamen's deaths occurred on the high seas or were the result of negligence but not of unseaworthiness. Admiralty cannot provide the parent's solicitude at a voyage's outset when their right to recover for loss of society is dependent on the fortuity that the deaths occur in territorial waters and are caused by unseaworthiness.
 
 
 34
 Miles, 882 F.2d at 988 (quoting Sistrunk, 770 F.2d at 459) (emphasis in original).
 
 
 35
 The court concluded that because the parents in that case were not dependent on their son and because they could not have recovered loss of society damages under the Jones Act or DOHSA, it did not contravene the aim of providing special solicitude to seamen by denying them recovery for loss of society.
 
 
 36
 The United States Supreme Court has indicated that it would approve of the Fifth Circuit's holding in Miles. In Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the court held that loss of society damages are recoverable in Moragne actions, but did not delineate which beneficiaries could receive such benefits. The language of the Court, however, suggests that dependency is the critical factor. For example, the Court quoted Moragne:
 
 
 37
 [I]n the case of mere injury, the person physically harmed is made whole for his harm, while in the case of death, those closest to him--usually spouse and children--seek to recover for their total loss of one on whom they depended.
 
 
 38
 Gaudet, 414 U.S. at 578, 94 S.Ct. at 811 (quoting Moragne, 398 U.S. at 382, 90 S.Ct. at 1778) (emphasis added).
 
 The Court further stated:
 
 39
 Since the policy underlying the remedy is to insure compensation of the dependents for their losses resulting from the decedent's death, the remedy should not be precluded merely because the decedent, during his lifetime, is able to obtain a judgment for his own personal injuries.
 
 
 40
 Gaudet, 414 U.S. at 583, 94 S.Ct. at 814 (emphasis added).
 
 
 41
 We believe this language indicates that the Supreme Court would deny recovery for loss of society damages by a non-dependent parent. Further, we agree with the reasoning of the court below and of the Fifth Circuit.[8] Accordingly, we AFFIRM that portion of the District Court's decision finding that non-dependent parents of a decedent may not recover damages for loss of society.
 
 III. Proximate Cause
 
 42
 Defendant Whittaker argues that the trial court's determination that water entered the Sea Mar through the air vents, that such water accumulated in the boat in sufficient quantity to disable the engines, and that but for accumulation of water from the vents the boat and its occupants would not have disappeared was clearly erroneous. Plaintiffs correctly assert that defendant Whittaker's argument is essentially that the District Court's findings regarding proximate cause were clearly erroneous.[9] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 
 43
 Whittaker stresses that decedents' deaths may have been caused in some manner other than the entrance of water through the air vents. The trial court carefully considered the possibilities suggested by defendants, yet concluded that the evidence established that the most probable cause of the Sea Mar's sinking and the plaintiffs' injuries was the air vent defect. The court found that the other possibilities were not probabilities.
 
 
 44
 As this Court has recognized, "[c]ausation is an element which may be proved either by direct or circumstantial evidence. However, if a party seeks to establish causation by circumstantial evidence, 'the evidence must be sufficient to tilt the balance from possibility to probability.' " Calhoun v. Honda Motor Co., 738 F.2d 126, 130 (6th Cir.1984) (quoting Perkins v. Trailco Mfg. & Sales Co., 613 S.W.2d 855 (Ky.1981)).[10] We find that the evidence in the present case is sufficient to tilt the balance from possibility to probability. The testimony of previous owner Lazar and current owner Boles established that the boat accumulated significant amounts of water on lengthy trips. Other F-32 owners testified regarding instances of water accumulation in certain sea and weather conditions. Expert testimony revealed the effect of the water on the boat's ability to remain afloat. In light of this evidence, we hold that the trial court was not clearly erroneous in finding that the air vent defect was the proximate cause of the Sea Mar's sinking and thus of plaintiffs' injuries.[11]IV. Admissibility of Evidence
 
 
 45
 Defendants Whittaker and Boles argue that the District Court erroneously admitted evidence of similar occurrences. The trial court admitted the deposition testimony of eight owners of other Trojan F-32's with the same defective hull vent design. The court properly found the evidence relevant to the issue of causation because it increased the possibility of a swamping and sinking of the Sea Mar. Later, and in light of the fact that the trial would not be a jury trial, the court properly found that the testimony was not unduly prejudicial. The admission of evidence of similar occurrences is subject to the reasonable discretion of the trial court. Olin-Mathieson Chemical Corp. v. Allis-Chalmers Mfg. Co., 438 F.2d 833, 838 (6th Cir.1971); Jones & Laughlin Steel Corp. v. Matherne, 348 F.2d 394, 400 (5th Cir.1965); Rhodes v. Michelin Tire Corp., 542 F.Supp. 60, 62 (E.D.Ky.1982) (quoting Jones & Laughlin, 348 F.2d at 400). To be admissible, such evidence must be substantially similar to the occurrence in question. Jones & Laughlin, 348 F.2d at 400. Defendants argue that this substantial similarity was not present in the case at hand. We disagree. Substantial similarity existed in that the incidents to which the boat owners testified involved the same model boat, the same hull design, the same defect, and a water intake occurring under circumstances similar in important respects to those present when the Sea Mar disappeared. Therefore, we find that the trial court did not abuse its discretion in admitting this testimony.
 
 
 46
 Defendant Whittaker argues that the trial court erred in admitting the product recall letter. The recall letter states that sustained operation under certain conditions of wave height, direction, attitude, speed and other variables could allow water to enter through the aft vents in sufficient quantities to "disable the engines, and eventually swamp the boat."
 
 
 47
 Whittaker argues that there was no evidence that the necessary conditions described in the recall letter were in fact encountered by the Sea Mar. We disagree. There was substantial evidence confirming that F-32's took on large quantities of water in a variety of conditions. The testimony of Lazar, a former owner of the Sea Mar, and of Boles confirmed this finding as well. The evidence taken as a whole renders the recall letter relevant to the issue of causation. Thus we find that the District Court did not abuse its discretion in admitting this evidence.
 
 
 48
 Boles argues that the trial court improperly admitted the testimony of expert witnesses Commander Deck and Mr. Richard without foundation. Commander Deck testified regarding an inclining experiment he performed. The experiment established how accumulation of the water in the bilge changed the righting arm and reduced the stability of the boat, rendering it vulnerable, especially after the water in the bilge reaches a sufficient quantity to stall the engines. Mr. Richard testified that accumulation of water would be difficult to detect at night and that changes in the boat's speed or attitude due to the water intake may go unnoticed.
 
 
 49
 Boles' argument is hinged upon his assertion that no evidence exists to show that the Sea Mar accumulated water or lost its stability due to water intake. As discussed above, we disagree. The testimony from owners of the Sea Mar, the testimony from owners of other F-32's with the same hull vent defect, the recall letter, and the expert testimony regarding the weather and sea conditions in which the Sea Mar disappeared all provided a basis for the expert testimony of Deck and Richard.[12] Therefore, we find that the trial court did not abuse its discretion in admitting this expert testimony.
 
 
 50
 V. Damages for Pre-death Terror, Fright and Shock
 
 
 51
 Defendants Whittaker and Boles argue that the trial court erred in awarding damages for pre-death terror, fright and shock because the circumstances of death are wholly speculative. Damages for pain and suffering, however, include compensation for the terror and fright a drowning victim experiences upon the realization that he is about to lose his life. Petition of United States Steel Corp., 436 F.2d 1256, 1275-76 (6th Cir.1970), cert. denied, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1971). Further, "[a]n eyewitness account of the circumstances of the deaths is not essential to such an award." Id. at 1275. As in United States Steel, the evidence in the record "give[s] rise to the almost inescapable inference that [plaintiffs] died by drowning, and nothing [in the record] suggests that they were rendered unaware of their fate." Id. at 1276. Rather, the trial court properly found that the evidence indicated that the decedents were aware of their desperate situation prior to their deaths. The physical evidence presented at trial included hatch covers that were washed ashore. These hatch covers had been located on the floor of the cabin, underneath heavy furniture, and therefore must have been removed intentionally. This further indicates that one or more of the decedents were in the engine compartment, probably attempting to save themselves prior to sinking. This conclusion is buttressed by the fact that none of decedents' bodies ever surfaced, indicating they were below deck at the time of death. In light of this evidence, we find that the court was not clearly erroneous in concluding that decedents suffered from terror, fright and shock before capsizing. Therefore, we AFFIRM that portion of the District Court's decision awarding damages for pre-death terror, fright and shock.
 
 VI. Duty of Reasonable Care
 
 52
 Defendant Boles argues that the trial court erred in finding him liable as owner. He argues that decedents and Bay Haven Marina were owners pro hac vice and that they were therefore responsible for the vessel's condition. The trial court, however, determined that Boles was not liable to plaintiffs as a result of his ownership status. Rather, the court found that Boles was negligent in failing to inform the decedents of the boat's latent defects.
 
 
 53
 Boles also argues that the District Court erred in concluding that he was liable on the basis of a failure to advise the decedents about the water intake problem. He first contends that he had no duty to warn the decedents. The District Court properly relied upon Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959), for the proposition that general principles of admiralty law require that an owner exercise such care as is reasonable under the circumstances.[13] Boles next contends that the court erred in finding that a latent danger existed and that Boles appreciated the risks but nonetheless failed to warn the decedents of them. We disagree. As stated above, we believe the record provides sufficient evidence to establish that the defect existed. The record also establishes that Boles appreciated the risk of the water intake problem, for he was forced to stop the boat on several occasions in order to deal with the problem. Finally, the record establishes that he failed to warn the decedents. Although at one point Boles testified that he did not recall whether he advised decedents of the problem, he testified elsewhere that he told decedents "nothing specific" in terms of particular problems of the boat. The District Court was not clearly erroneous in accepting as true one of these statements.
 
 VII. Limitations on Liability
 
 54
 Boles also argues that the trial court erred in concluding that Boles' liability was not limited pursuant to 46 U.S.C.A. Sec. 183, which reads in pertinent part:The liability of the owner of any vessel ... for any ... loss ... without the privity or knowledge of such owner ... shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
 
 
 55
 46 U.S.C.A. Sec. 183(a).
 
 
 56
 This Court has recently reaffirmed that 46 U.S.C.A. Sec. 183 applies to pleasure boats. In re Young, 872 F.2d 176 (6th Cir.1989). In that case, we noted that:
 
 
 57
 [A] negligent owner is not relieved of liability unless he can prove lack of privity or knowledge. Negligence is usually the sine qua non of the underlying tort action which is probably why one does not see the issue raised here more frequently litigated.
 
 
 58
 Id. at 178 n. 3 (emphasis in original).
 
 
 59
 Because we agree with the trial court's finding that Boles had knowledge of the defect, we find that he does not fall within the provisions of 46 U.S.C.A. Sec. 183. Accordingly, we find that the District Court did not err by failing to limit Boles' liability.[14]
 
 VIII. Lost Earnings
 
 60
 Boles very briefly argues that the trial court was clearly erroneous in allowing and calculating a recovery for lost future earnings. Boles challenges the court's use of an annual growth rate of seven percent. Evidence was presented, however, in support of a rate higher than that used by the trial court. Although the court declined to accept the evidence of these higher rates, no other evidence of projected future inflation or probable growth rate for earnings was introduced. In light of the fact that Boles had the opportunity to introduce such evidence yet failed to do so, we cannot find that the trial court was clearly erroneous in using the rate that it did.
 
 IX. Conclusion
 
 61
 For the above-stated reasons, we REVERSE the District Court's denial of plaintiffs' request for prejudgment interest on their awards; AFFIRM the District Court's finding that non-dependent parents of a decedent may not recover damages for loss of society; AFFIRM the District Court's finding that the air vent defect was the proximate cause of the Sea Mar's sinking and thus of decedents' deaths; AFFIRM the District Court's decision regarding the admission of evidence; AFFIRM the District Court's decision awarding damages for pre-death terror, fright and shock; AFFIRM the District Court's finding that the owner of the boat was liable for his failure to exercise such care as was reasonable under the circumstances; AFFIRM the District Court's refusal to limit Boles' liability pursuant to 46 U.S.C.A. Sec. 183; and AFFIRM the District Court's allowance and calculation of a recovery for lost future earnings. The case is REMANDED to the District Court for further proceedings consistent with this opinion.
 
 
 
 [1]
 To avoid confusion, the term "plaintiffs" will refer to the survivors of decedents, and the term "defendants" will refer to Whittaker and Boles
 
 
 [2]
 The District Court noted that "[i]n the Sixth Circuit, a distinction has been drawn in several cases, on this issue, between damages sought for personal injury or death, and those sought for property damage under admiralty law (the classic liquidated/unliquidated damages dichotomy).... One court in this district has taken statements from these cases as an indication that prejudgment interest may not be awarded in this circuit on general maritime wrongful death claims. See Peterson v. Chesapeake & Ohio Ry. Co., 582 F.Supp. 1581, 1582 (W.D.Mich.1984), aff'd, 784 F.2d 732 (6th Cir.1986)."
 
 
 [3]
 A Moragne claim is a wrongful death action brought under general maritime law. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)
 
 
 [4]
 There does not appear to be any case law in this Circuit to the contrary
 
 
 [5]
 An unseaworthiness claim is a general maritime claim rather than a Jones Act claim
 
 
 [6]
 This result is consistent with the law in the Seventh Circuit on this issue. First Nat'l Bank of Chicago v. Material Serv. Corp., 597 F.2d 1110, 1120-21 (7th Cir.1979). Although it is the case, as the District Court noted, that many courts have found that the traditional distinction between personal injury and death damage awards and property damage awards is no longer applicable in all admiralty cases, we need not decide the issue of the applicability of the distinction to Jones Act cases because we do not have such a case before us
 
 
 [7]
 This is consistent with the language of the court in Alkmeon Naviera stating that prejudgment interest "is usually denied only when a party 'deprive[s] himself of interest.' " Alkmeon Naviera, 633 F.2d at 797 (quoting The President Madison, 91 F.2d 835, 847 (9th Cir.1937)). It cannot be said that a party deprives himself of interest whenever uncertainty regarding claims or damages exists
 
 
 [8]
 Plaintiffs argue that DOHSA and the Jones Act permit parents to recover without an express showing of dependence. We agree with the court below that:
 [P]laintiffs, in making this argument, advocate that [the court] adopt language from either statute without reference to how that language fits into each statute as a whole. In DOHSA, for example, although the statute explicitly speaks in terms of damages for the benefit of "decedent's wife, husband, parent, child, or dependent relative," the requirement of dependence is written into the statute, insofar as damages are expressly limited to "pecuniary loss." Damages under the Jones Act, similarly, are limited to the sort of pecuniary losses that only dependents are likely to suffer. Each statute, therefore, sets up a scheme where dependents are protected, to the exclusions of other persons who may conceivably have suffered injury.
 
 
 [9]
 "[T]his court, following the prevailing view, has long held that a district judge's findings regarding ... causation are subject to the clearly erroneous standard." Hasler v. United States, 718 F.2d 202, 204 (6th Cir.1983), cert. denied, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984)
 
 
 [10]
 Although both Whittaker and Boles attempt to liken the present case to Calhoun, we find that here, unlike in Calhoun, there is substantial evidence to support a finding of causation
 
 
 [11]
 Defendant reasserts his argument that Boles' removal of a rear bilge pump was an "intervening cause" breaking the chain of causation. Upon reviewing the record, however, we find no evidence that Boles removed such a pump
 
 
 [12]
 Further, the trial court did not rely upon the expert testimony as to any ultimate issue in the case
 
 
 [13]
 It is true that this duty arose from Boles' ownership status. We agree with the court below that Boles was indeed the owner of the Sea Mar. Decedents and Bay Haven Marina were not owners pro hac vice because Boles did not relinquish all rights, possession and control of the boat to them. See Guzman v. Pichirilo, 369 U.S. 698, 699, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962)
 
 
 [14]
 Bay Haven Marina makes this same argument. Because we agree with the District Court that the Marina is not liable, we need not discuss the application of 46 U.S.C.A. Sec. 183 to Bay Haven Marina