CEMENT DIVISION, NATIONAL GYP-SUM COMPANY, Reed & Brown, Incorporated, New York Marine Managers, Incorporated, et al., Plaintiffs–Appellants,

v.

CITY OF MILWAUKEE, Defendant–Appellee.

No. 93–2545.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1994.

Decided Aug. 5, 1994.

Harney B. Stover (argued), Kathryn A. Lonsdorf, Davis & Kuelthau, Milwaukee, WI, for plaintiffs-appellants.

Rudolph M. Konrad (argued), Office of the City Atty., Milwaukee, WI, for defendant-appellee.

Before CUMMINGS and MANION, Circuit Judges, and MILLER, District Judge.*

MANION, Circuit Judge.

While moored at a berth in the Port of Milwaukee, a ship broke away, crashed into a headwall and sank. The ship's owners and insurers sued the city. The first appeal to this court resulted in a division of liability, two-thirds to the ship's owners and one-third to the city. On remand, the district court determined that because the parties were mutually at fault, and because the defendant was a municipality, the defendant would not be liable for prejudgment interest on its share of the amount of damages incurred. We reverse the district court and remand for a calculation of prejudgment interest.

## I.

This appeal is the latest chapter in a 15–year–old dispute arising out of an accident involving a ship called the S/S EM FORD ("FORD"). The facts surrounding the damage to the FORD and its cargo have been set out in copious detail in our previous disposi-

tion of this matter in *Cement Div., Nat. Gypsum Co. v. City of Milwaukee*, 915 F.2d 1154 (7th Cir.1990), *cert. denied*, 499 U.S. 960, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1991). For purposes of the present appeal, we offer only the following. The FORD was moored in a berth at the Port of Milwaukee, Wisconsin. During a storm, the FORD broke away, crashed into the headwall of its berth and sank to the bottom of Milwaukee Harbor. Following this, the FORD's owner, the Cement Division of the National Gypsum Company, along with the ship's various insurers (referred to collectively as "National Gypsum"), commenced an admiralty action against the City of Milwaukee ("City"), claiming $4.5 million in damages to the FORD and her cargo. The City denied liability, alleged contributory negligence on the part of National Gypsum and sought $250,000 from National Gypsum for damage to the City's dockwall caused by the FORD.

At a bifurcated trial on the issue of liability, the district court found National Gypsum to be 96% negligent and the City 4% negligent. Following an interlocutory appeal, we reversed the district court's allocation of liability, and reapportioned the parties' liability, two-thirds to National Gypsum, one-third to the City. *See Nat. Gypsum Co.*, 915 F.2d at 1160.

Following remand, the parties negotiated the issue of damages. Pursuant to a settlement agreement, a judgment was entered against the City in the amount of $1,677,-541.86, which the City promptly paid over to the plaintiffs. Hence the only issue left for the district court to determine was whether National Gypsum was entitled to collect prejudgment interest—to the tune of $5,317,-807.70—on the damages paid by the City. Following briefing on the issue, the district court denied National Gypsum's request for prejudgment interest. Although recognizing that an award of prejudgment interest is the general rule in admiralty, the district court determined that under the peculiar circumstances of this case it would be inequitable to require the City to pay prejudgment interest.

---

* Hon. Robert L. Miller, Jr., District Judge for the Northern District of Indiana, is sitting by desig- nation.

Specifically, the district court determined that the mutual fault of the parties, including the fact that National Gypsum was two-thirds contributorily negligent, rendered any award of prejudgment interest inequitable.

Alternatively, the district court found that the City's status as a municipality undercut one of the reasons for awarding prejudgment interest. The district court noted that an admiralty plaintiff is awarded prejudgment interest because from the date of the loss, the plaintiff-shipowner has been deprived of the money to repair his ship while, at the same time, the wrongdoer has enjoyed the use of the victim's money and is accruing interest on it. The district court observed that a municipality, "is not in [a] position.... to set aside an interest bearing fund at the time of loss, but can only levy taxes to pay a settlement or final judgment." *Decision and Order* at 5. The district court apparently reasoned that since the City had not been accruing interest on the amount owed to National Gypsum from the date of the accident, it should not be treated as if it had. This unique circumstance, the district court determined, constituted another reason why an award of interest would be inappropriate. This appeal followed.

## II.

■■■ The issue before us is whether the district court erred in denying National Gypsum's request for prejudgment interest. "The general rule in admiralty, in order to fully compensate the plaintiff, is to award prejudgment interest from the date of the accident." *Central Rivers Towing v. City of Beardstown*, 750 F.2d 565, 574 (7th Cir.1984); *accord United States v. Peavey Barge Line*, 748 F.2d 395, 401, 402 (7th Cir.1984); *Bunge Corp. v. American Com. Barge Line Co.*, 630 F.2d 1236, 1242 (7th Cir.1980); *First Nat. Bank of Chicago v. Material Serv. Corp.*, 597 F.2d 1110, 1120 (7th Cir.1979). This general rule notwithstanding, admiralty law also recognizes that a district court has discretion to deny prejudgment interest where it finds that special or peculiar circumstances would render such an award inequitable. *See Central Rivers Towing*, 750 F.2d at 574; *accord Hillier v. Southern Towing Co.*, 740 F.2d

583, 585 (7th Cir.1984). Examples of such peculiar circumstances include: (1) the unreasonable delay in filing the action by the party seeking prejudgment interest; (2) false or frivolous claims; (3) the inability to determine liability and the extent of damages eligible for an award of prejudgment interest; and (4) the mutual fault of the parties. *See Central Rivers Towing*, 750 F.2d at 574. The existence of a peculiar circumstance is a factual determination which we will review for clear error. *Hillier*, 740 F.2d at 585. If the determination is not clearly erroneous, then the decision to deny prejudgment interest based on the existence of those peculiar circumstances is left to the district court's discretion. *Id.* But this discretion "is not unbridled; it is exercised by law." *In re Oil Spill By The Amoco Cadiz*, 954 F.2d 1279, 1334 (7th Cir.1992); *see also Afran Transport Co. v. The Bergechief*, 285 F.2d 119, 120 (2d Cir.1960) (stating that a district court's discretion to deny prejudgment interest is "a legal discretion, rather than merely one at will."); *The Wright*, 109 F.2d 699, 702 (2d Cir.1940) (same). In other words, "[d]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Amoco Cadiz*, 954 F.2d at 1334 (quotations omitted) (citations omitted). As a result, while prejudgment interest in admiralty is within the district court's discretion, "this discretion must be 'exercised with a view to the right to interest unless the circumstances are exceptional.'" *Alkmeon Naviera, S.A. v. M/V MARINA L.*, 633 F.2d 789, 797 (9th Cir.1980) (quoting *The President Madison*, 91 F.2d 835, 847 (9th Cir.1937)).

National Gypsum raises two challenges to the district court's refusal to award prejudgment interest. First, it contends that the district court incorrectly denied prejudgment interest on the basis of mutual fault. National Gypsum does not claim that the district court's finding of mutual fault was clearly erroneous; rather, it maintains that, as a matter of law, mutual fault can no longer constitute a peculiar circumstance justifying the denial of interest. Second, National Gypsum challenges the district court's determination that the City's status as a municipality shields it from having to pay prejudgment

interest. We will address each of these contentions in turn.

## A. Mutual Fault

National Gypsum argues that the mutual fault of the parties cannot constitute a special or peculiar circumstance justifying the denial of prejudgment interest. While acknowledging at oral argument that this court, in *Central Rivers Towing, Hillier* and *First Nat. Bank of Chicago,* listed mutual fault as a peculiar circumstance, it also correctly pointed out we have never actually relied on this in affirming a district court's denial of prejudgment interest. Accordingly, National Gypsum asks us to consider whether mutual fault should be recognized in this circuit as a valid basis to deny an award of prejudgment interest. In support of its position, National Gypsum urges us to adopt the reasoning of the Ninth Circuit in *Alkmeon Naviera,* which has stated that, in light of the proportionate fault rule announced by the Supreme Court in *United States v. Reliable Transfer,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), mutual fault can no longer constitute a reason to deny an otherwise appropriate award of prejudgment interest. Therefore, in determining the merits of National Gypsum's arguments, we must first examine the Ninth Circuit's decision in *Alkmeon Naviera.*

*Alkmeon Naviera* involved a collision between two vessels which were both at fault. In ruling on the parties' requests for prejudgment interest, the district court summarily denied the requests, stating without elaboration that the peculiar circumstances of the case did not entitle either party to an award of interest. On appeal, the Ninth Circuit found no basis in the record before it that would justify the district court's determination and, accordingly, reversed and remanded for a determination of the existence of special or circumstances that would warrant the denial of prejudgment interest. *See Alkmeon Naviera,* 633 F.2d at 798.

▮ The portion of *Alkmeon Naviera* relevant to the case before us is where the court discusses the reasons behind the mutual fault exception. The court observed that district courts "denied prejudgment interest in mutual fault cases in order to mitigate the harsh

effects of the old equal division of damages rule." *Alkmeon Naviera,* 633 F.2d at 798 n. 12. Under that rule, whenever there was a collision resulting from the fault of both parties, then the parties' damages would be added together and the total would be equally divided between them. Under that formula, if one party's damages were greater than the other's, then the court would order the party with the lesser damages to pay over to the other party one-half of the difference between their respective losses, the rationale being that this would equalize the burden. *See The Manitoba,* 122 U.S. 97, 111, 7 S.Ct. 1158, 1165–66, 30 L.Ed. 1095 (1887); *accord The North Star,* 106 U.S. 17, 22, 1 S.Ct. 41, 45–46, 27 L.Ed. 91 (1882). Under this regime, however, courts soon recognized that in cases where one party was only slightly negligent, an award of prejudgment interest to the more culpable party would, in effect, penalize the less culpable party. This is because that party, having already been saddled with paying one-half of the other party's damages, would now have to pay prejudgment interest on that amount as well, even though he was significantly less responsible for the damages incurred. This led some courts in divided damages cases either to award prejudgment interest to the party who was only slightly at fault, or to deny prejudgment interest in cases where the party seeking it was substantially more at fault. *See Alkmeon Naviera,* 633 F.2d at 798 n. 12; *see also Iberian Tankers Co. v. Gates Constr. Corp.,* 504 F.2d 747, 748 (2d Cir.1974) (stating that in a collision case involving mutual fault "the district court has discretion to deny [prejudgment] interest where the party to whom it would be awarded is substantially at fault."); *Afran Transport Co.,* 285 F.2d at 120 (suggesting that an award of prejudgment interest to the less culpable party in a case involving mutual fault would be appropriate to "ameliorate somewhat the harsh American rule that division of damages must be equal without reference to the degree of fault.").

▮ But as stated earlier, the divided damages rule was thrown overboard by a unanimous Court in *United States v. Reliable Transfer* and was replaced with comparative

fault. That being the case, the court in *Alkmeon Naviera* reasoned that "distortions in compensation can no longer occur." *Alkmeon Naviera*, 633 F.2d at 798 n. 12. In other words, because *Reliable Transfer* extinguished the divided damages rule and thus its harsh effects, there no longer exists a reason to deny prejudgment interest in collisions cases involving mutual fault. In fact, if comparative fault "penalizes wrongdoing[ ] in proportion to measure of fault," *Reliable Transfer*, 421 U.S. at 405 n. 11, 95 S.Ct. at 1712–13 n. 11, then, according to *Alkmeon Naviera*, to continue denying prejudgment interest on the basis of mutual fault would, in essence, be penalizing the more culpable party twice for the same mistake. *See Alkmeon Naviera*, 633 F.2d at 798 n. 12 (citing *Complaint of B.F.T. No. Two Corp.*, 433 F.Supp. 854, 876 (E.D.Pa.1977)). For these reasons, the court in *Alkmeon Naviera* concluded that it no longer made sense to invoke the mutual fault of the parties as a basis to deny prejudgment interest. More recently, the Sixth Circuit in *Anderson v. Whittaker Corp.*, 894 F.2d 804 (6th Cir.1990), took note of and agreed with *Alkmeon Naviera's* reasoning in holding that it would no longer consider mutual fault to be a peculiar circumstance justifying the denial of prejudgment interest. *Anderson*, 894 F.2d at 810. We, too, are persuaded by the reasoning in *Alkmeon Naviera* and likewise conclude that, as a matter of law, the mutual fault of the parties should not constitute a reason to deny an award of prejudgment interest in admiralty.

The City raises several reasons to follow the mutual fault exception, none of which merits extended discussion. First, the City appears to argue that the rationale for mutual fault has nothing to do with offsetting the divided damages rule. Instead, the City, relying on *Inland Oil and Transport Co. v.*

*Ark–White Towing*, 696 F.2d 321 (5th Cir. 1983), argues that where the party making a claim to interest is partially at fault, this "weakens his equitable claim that his funds have been withheld by a recalcitrant party." *Inland Oil*, 696 F.2d at 328. The City's contention that the language from *Inland Oil* best provides a basis for denying prejudgment interest in cases involving mutual fault would require a balancing of the equities approach, an approach we believe cannot be sustained following the Supreme Court's decision in *West Virginia v. United States*, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987). There, the United States sought recovery of prejudgment interest on a debt incurred by the state of West Virginia for emergency relief provided by the Army Corps of Engineers. The district court in that case held that the question of whether interest had to be paid depended on a balancing of equities between the parties. The Supreme Court's assessment of this method for refusing to award prejudgment interest was simple: "[T]he Court of Appeals rejected such an approach, *as do we.*" *West Virginia*, 479 U.S. at 311 n. 3, 107 S.Ct. at 706–07 n. 3 (emphasis added); *accord Amoco Cadiz*, 954 F.2d at 1334–35.[1]

Second, the City contends that where there is mutual fault, the exact amount of the funds due and owing from each party to the other is not immediately ascertainable and fixed before trial. Because of this uncertainty, the City argues, it is inequitable to charge a party interest for not paying an unknown sum. We agree that there are decisions stating that, at least where fault is mutual, prejudgment interest from the date of the collision should be denied due to the uncertainty as to which party will bear the ultimate liability to make payment to the other. *See, e.g., First Nat. Bank of Chicago*, 597

---

1. We note that the court in *Inland Oil* heard arguments urging that it adopt the reasoning in *Alkmeon Naviera* and abolish the mutual fault exception. The Fifth Circuit, however, rejected this invitation, claiming that the reasoning in *Alkmeon Naviera* was flawed. This was because, according to *Inland Oil*, "comparative fault has long been the rule in maritime personal injury actions. Yet courts drew no distinction between denials of prejudgment interest in collision cases and such denials in personal injury cases." *Id.* (citation omitted). We point out, however, that, except for citing *Reliable Transfer* for the proposition that interest has long been allowed in personal injury cases in admiralty, the court in *Inland Oil* cited no other authority for its statements that admiralty decisions made no distinction between personal injury and collision cases. Therefore, we do not accept *Inland Oil*'s reasons for rejecting *Alkmeon Naviera* in reaching today's conclusion.

F.2d at 1121 (adopting the rationale of the Fifth Circuit in *Sinclair Refining Co. v. S.S. Green Island,* 426 F.2d 260, 262 (5th Cir. 1970), and stating that in cases involving mutual fault, the uncertainty respecting the party having the ultimate liability should be considered in deciding whether to award prejudgment interest); *The Wright,* 109 F.2d at 702 ("Several cases deny the award of interest ... where damages are divided as a result of joint fault. This is based on the uncertainty as to the party which will have the ultimate liability to make payment on determination of the balance due."). Of course using uncertainty as a basis to deny interest in a mutual fault case made sense under the old divided damages regime. This is because under that rule, it was not until after trial that there would be a determination from the district court as to which of the parties would have to come up with the extra money to make the other party whole. But now with the abolition of the divided damages rule and the adoption of comparative fault both parties are liable to each other in relation to their respective degree of fault. In other words, although the exact amount of damages may not be known until after trial, neither party can now claim pretrial uncertainty as to whether he will in fact be liable to the other. Thus, after *Reliable Transfer,* it only makes sense that uncertainty as to eventual liability can no longer be a factor to consider in determining whether to deny prejudgment interest in cases involving mutual fault.

Lastly, the City contends that this court, on two occasions, in *Central Rivers Towing* and *Hillier,* has had the opportunity to adopt the reasoning of *Alkmeon Naviera* and scuttle mutual fault but has refused to do so. We think the reason for this is clear: the issue of mutual fault was not presented in either case. *Central Rivers Towing,* for example, did not involve a plaintiff who was contributorily negligent; *Hillier* only addressed whether the plaintiff (who was not negligent) could recover prejudgment interest on an award of damages arising out of future losses for pain and suffering. Hence

any mention of mutual fault in either of these cases was mere *dicta.* In fact the only decision from this circuit that comes close to applying the mutual fault exception is *First Nat. Bank of Chicago.* In that case, we reversed the district court's initial determination that the plaintiff was not contributorily negligent, and directed the court on remand to reallocate fault between the parties. We also directed the court on remand to determine whether, given the mutual fault of the parties, an award of prejudgment interest to the plaintiff would be inappropriate. *See First Nat. Bank of Chicago,* 597 F.2d at 1121. However, unlike decisions from the Fifth Circuit, which consistently uphold denials of prejudgment interest in mutual fault cases, *see, e.g., Inland Oil,* 696 F.2d at 328 (summarizing cases), this court in *First Nat. Bank of Chicago* did not adopt a *per se* rule against prejudgment interest in a case involving mutual fault; rather, that case merely noted that mutual fault was one "factor[ ] to be considered by the trier of fact *along with other facts and circumstances* in determining if there exist the necessary peculiar circumstances that will authorize the exercise of discretion to award less than full compensation by denying interest." *First Nat. Bank of Chicago,* 597 F.2d at 1121 (quotations omitted) (citations omitted) (emphasis added). Nevertheless, in order to remove any uncertainty, we depart from this portion of *First Nat. Bank of Chicago* and reiterate our holding that the mutual fault of the parties in an admiralty collision case does not constitute a peculiar circumstance justifying the denial of prejudgment interest.**

### B. *Municipality Status*

■ This justification for denying prejudgment interest need not detain us very long. We have found no cases, nor has the City cited us any, from this circuit or elsewhere which have stated that an award of interest should be denied where the party against whom it is sought is a municipality. In fact, in *Central Rivers Towing,* the plaintiff sought and obtained an award of prejudg-

---

** This opinion was circulated before release to all judges in active service. *See* Circuit Rule 40(f).

No judge favored a hearing *en banc.*

ment interest at the rate of 12% per annum against the city of Beardstown without the district court or this court ever raising an objection to such an award on the basis that it was being levied against a city. The City has not suggested that we disavow this portion of *Central Rivers Towing*. Accordingly, we refuse to recognize municipality status as a peculiar circumstance warranting the denial of prejudgment interest.

## C. Calculating the Award

■■■ Having determined that National Gypsum is entitled to an award of prejudgment interest, we offer the following to the district court on remand as guidance in calculating that award. First, in keeping with the general rule, the district court should calculate the interest from the date of the accident, *see Central Rivers Towing*, 750 F.2d at 574, which in this case was 1979. As far as the rate at which interest should be calculated, we recognize that such a determination is traditionally left to the district court's discretion. *Id.* But we have said on previous occasions that the best starting point is to award interest at the market rate, which means an average of the prime rate for the years in question. *See Amoco Cadiz*, 954 F.2d at 1332; *accord Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436–37 (7th Cir.1988); *Central Rivers Towing*, 750 F.2d at 574. In addition, the district court may also want to consider the City's status as a municipality, not as basis to deny prejudgment interest altogether, but as a guide to setting the interest rate. As pointed out by *Amoco Cadiz* and *Gorenstein*, one of the factors used in determining the rate of prejudgment interest is the creditworthiness of the judgment debtor. Thus, the district court could, in its discretion, set the rate of interest to match that which lenders would charge the City for short-term, unsecured loans. *See Amoco Cadiz*, 954 F.2d at 1332; *Gorenstein*, 874 F.2d at 436. As to whether to award compound interest, we conclude that that, too, is a determination better left to the discretion of the district court. *See Transorient Navigators Co., S.A. v. M/S SOUTHWIND*, 788 F.2d 288, 293 (5th Cir.1986). Finally, in calculating its eventual award, we ask the district court to memorialize its reasoning in order to assist us in the event of future review.

## III.

The district court's order denying prejudgment interest is REVERSED. This case is REMANDED to the district court for a determination of prejudgment interest consistent with this opinion.