**CEMENT DIVISION, NATIONAL GYPSUM COMPANY; Reed & Brown, Inc., New York Marine Managers, Inc., Allstate Insurance Company, c/o American Marine Underwriters, Inc., Highlands Insurance Company, Employers Casualty Company of Texas, c/o Texas Marine Underwriters Agency, Inc., Donald H. Miller, Inc., U.S. Fidelity and Guarantee Company, Great Lakes Protective Association, the Atlantic Companies, Lloyds Underwriters, Institute Companies, including: Commercial Union Assurance Co. Ltd. "I" A/o. Andrew Weir Insurance Co. Ltd., English & American Insurance Co. Ltd. "M" 1 A/o., Orion Insurance Co. Ltd. "T" A/o., Yasuda Fire & Marine Insurance Co. (U.K.) Ltd. "T" A/o., Atlas Insurance Co. Ltd. "T" A/o., Phoenix Assurance Co. Ltd., British Law Insti-**

---

tute Co. Ltd., Road Transport and General Insurance Co. Ltd., Insurance Company of North America (U.K.) Ltd. "G" A/o., Insurance Company of North America (U.K.) Ltd. "O" A/o., Home Insurance Co. Ltd. "X" A/o., London & Hull Maritime Insurance Co. Ltd., Hanover Insurance Co, Ltd., Sphere Insurance Co. Ltd., Drake Insurance Co. Ltd., Bishopgate Insurance Co. Ltd. "F" A/o., British Law Insurance Co. Ltd. No. 2 A/o., Minster Insurance Co. Ltd. No. 2 A/o., Insurance Corporation of Ireland "L" A/o., Folksam International Insurance Co. (U.K.) Ltd., Terra Nova Insurance Co. Ltd. per Andrew Drysdale, Ltd., Economic Insurance Co. Ltd. "General" A/o., c/o Willis, Faber & Dumas Ltd., Ten Trinity Square, London EC3P 3ZX England, Plaintiffs,

v.

CITY OF MILWAUKEE, Defendant.

No. 80–C–1001.

United States District Court, E.D. Wisconsin.

Dec. 23, 1996.

Harney B. Stover, Jr., Davis & Kuelthau, Milwaukee, WI, for Plaintiffs.

Rudolph M. Konrad, Milwaukee City Attorney's Office, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

CURRAN, District Judge.

On December 4, 1992, this court entered judgment for the Plaintiffs, a ship owner and the ship's thirty-two hull and cargo insurers, in this admiralty allision case for $1,677,541.86—the agreed amount of the parties' settlement after trial and appeal. The Plaintiffs then sought prejudgment interest on this principal amount from the Defendant City of Milwaukee. This court denied the award, but the Seventh Circuit reversed, *see Cement Division, National Gypsum Company v. City of Milwaukee*, 31 F.3d 581 (7th Cir.1994), and the United States Supreme Court affirmed the appellate court. *See City of Milwaukee v. Cement Division, National Gypsum Company,* —— U.S. ——, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). This case has now been remanded to this court for a calculation of prejudgment interest.

### I. *POSITIONS OF THE PARTIES*

The Plaintiffs favor basing the rate of prejudgment interest on the prime rate calculated from the date of the allision to the date of judgment. The Plaintiffs want the interest compounded annually and an order for postjudgment on the award of prejudgment interest. In their Appendix, the Plaintiffs have supplied five tables showing their calculations of possible awards. They are: (1) a table of yearly interest averages for the prime rate, United States Treasury Bills (one year), National Gypsum Rates Paid, and the City's Local Government Pooled Investment Fund rates covering the average rates for the years 1979–1992; (2) a table of the actual calculations for average prime rates, compounded annually on the judgment entered on December 4, 1992, running from December 26, 1979 through December 4, 1992, with the amount of judgment principal paid subtracted and postjudgment interest through October 4, 1995, added, resulting in a total sum of $4,795,326; (3) a table covering one year United States Treasury Bill rates, averaged yearly, and computed as in table (2) resulting in a total sum due of $3,733,917.89; (4) a table covering National Gypsum Company interest rates on borrowed money during the prejudgment interest period; calculated as in table (2), resulting in a sum total of $7,842,103.01 (the Plaintiffs say this reflects the actual cost of borrowing to the Company); (5) a table covering the Local Government Pooled Investment Fund rates during the prejudgment interest period; calculated using the factors in table (2), resulting in a sum total of $3,442,183.06 (the Plaintiffs maintain that this rate reflects the actual return on its surplus funds during the period in question).

Having set forth their four proposed calculations, the Plaintiffs advocate that:

Based upon the law applicable to the questions before the District Court concerning prejudgment interest and postjudgment interest, it is the position of plaintiffs that the prejudgment interest ordered to be awarded to them by the Seventh Circuit, as affirmed by the United States Supreme Court, should be calculated at no less than prime rates, compounded annually, running from December 26, 1979, through December 4, 1992, resulting in a prejudgment interest award of $4,795,326. Added thereto should be post-judgment interest running from December 5, 1992, through October 4, 1995, at the rate of 3.76%, compounded annually. Postjudgment interest added to the prejudgment interest results in an amount due and owing as of October 4, 1995, of $5,324,478.99, with interest running thereon at the rate of $531.83 per day through December 4, 1995. At that time, if the monies have not been paid, further interest will have to be recalculated based upon the 52–week T–Bill rate equivalent coupon issue yield in effect on December 5, 1995. Any lesser award would not result in the plaintiffs, as the recovering parties, being

placed in the position in which they would have been had the accident never occurred or had they been paid immediately on December 25, 1979.

*Plaintiffs' Brief Re Amount of Interest Owed by Defendant to Plaintiffs and Appendix at 26–27.*

The Defendant City of Milwaukee, in turn, argues that prejudgment interest should be calculated using the City's borrowing rate for the period in question. The City reasons that its negligence put the Plaintiffs in the position of involuntary creditors to the City and that the Plaintiffs should receive the same rate of interest they would have received had they loaned the judgment principal to the City. The City also believes that the federal and Wisconsin state income tax the Plaintiffs might have paid on the interest earned on the "loan" should be subtracted from the prejudgment interest calculated. This after tax sum would then be "grossed up" to add the projected amount of state and federal income tax the Plaintiffs might owe on the prejudgment interest after it is received. The City proposes four alternative formulas for determining the amount of prejudgment interest due:

*Alternative I:* Computes interest on the damages using *tax-exempt one-year Delphi* [1] rates for the period 1979–1984 (before RAN's [2] were issued), and RAN rates for the period 1985–1992. *No* taxes were deducted on the annually calculated interest.

Compound interest: $1,664,898.35

*Alternative II:* Computes interest on the damages using *tax-exempt one-year RAN* rates. The interest is taxed annually for *state* tax purposes only. Where RAN rates were unavailable, one-year Delphi rates were used.

Compound interest, net of taxes, after gross up: $2,579,111.60

*Alternative III:* Computes interest on the damages using *tax equivalent* rates computed by our office. The interest is taxed annually for *federal and state* tax purposes. Tax equivalent rates are computed by "grossing up" the tax-exempt Delphi/RAN interest rate by increasing the interest rate for the federal tax paid on the interest and the additional state tax paid on the excess of the tax equivalent interest over the Delphi/RAN interest. As "proof" for this computation, using the 1979 tax equivalent interest rate:

| | |
|---|---|
| Tax equivalent interest rate | 10.01% |
| Less: federal tax on the above (46% * 10.011%) | (4.60) |
| Less: *net* state tax on the excess of tax equivalent over tax-exempt interest rate (net state rate is 4.26%) (10.01–5.2)* .04266 | (0.21) |
| Tax-exempt interest rate | 5.20% |

Compound interest, net of taxes, after gross up: $2,579,111.55 . . . .

---

*Alternative IV:* Computes interest on the damages using *tax equivalent* rates computed by Robert W. Baird & Company.[3] The interest is taxed annually for *federal and state* tax purposes in the same manner as Alternatives III.

Compound interest, net of taxes, after gross up: $2,463,449.73.

*Affidavit of David S. Laske, C.P.A. at 4–5 (emphasis supplied).*

**1.** The Delphi Hanover Corporation maintains and publishes an index of municipal bond rates. *See* Affidavit of W. Martin Morics at ¶ 14.

**2.** Revenue Anticipation Notes.

**3.** Robert W. Baird & Company is the financial advisor to the City of Milwaukee. *See* Affidavit of Lisa M. Voisin at ¶ 2.

In support of its computations the City has submitted a draft (dated August 24, 1995) of an article entitled "A Primer on Prejudgment Interest" by Michael S. Knoll, an associate professor of law at the University of Southern California. Although some passages of Knoll's draft support the City's "tax effect" argument, Knoll's article supports the Plaintiffs' calculations in many respects. Nevertheless, the Plaintiffs ask that the Knoll draft be stricken from the record on the ground that it has never been subject to peer review or published. The court will decline this request.

## II. *PRIOR CASE LAW*

After holding that this court must award prejudgment interest, the Seventh Circuit offered the following guidance:

> Having determined that National Gypsum is entitled to an award of prejudgment interest, we offer the following to the district court on remand as guidance in calculating that award. First, in keeping with the general rule, the district court should calculate the interest from the date of the accident, see *Central Rivers Towing [v. City of Beardstown]*, 750 F.2d [565] at 574 [7th Cir.1984], which in this case was 1979. As far as the rate at which interest should be calculated, we recognize that such a determination is traditionally left to the district court's discretion. *Id.* But we have said on previous occasions that the best starting point is to award interest at the market rate, which means an average of the prime rate for the years in question. See *[Matter of Oil Spill by] Amoco Cadiz*, 954 F.2d [1279] 1332 [7th Cir.1992]; *accord Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436–37 (7th Cir.1988); *Central Rivers Towing*, 750 F.2d at 574. In addition, the district court may also want to consider the City's status as a municipality, not as basis to deny prejudgment interest altogether, but as a guide to setting the interest rate. As pointed out by *Amoco Cadiz* and *Gorenstein*, one of the factors used in determining the rate of prejudgment interest is the credit-worthiness of the judgment debtor. Thus, the district court could, in its discretion, set the rate of interest to match that

which lenders would charge the City for short-term unsecured loans. See *Amoco Cadiz*, 954 F.2d at 1332; *Gorenstein*, 874 F.2d at 436. As to whether to award compound interest, we conclude that that, too, is a determination better left to the discretion of the district court. See *Transorient Navigators Co. S.A. v. M/S SOUTHWIND*, 788 F.2d 288, 293 (5th Cir. 1986). Finally, in calculating its eventual award, we ask the district court to memorialize its reasoning in order to assist us in the event of future review.

*Cement Division, National Gypsum Company v. City of Milwaukee*, 31 F.3d 581, 587 (7th Cir.1994), *aff'd*, —— U.S. ——, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995).

In affirming the Seventh Circuit, the United States Supreme Court explained that "[t]he essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Division, National Gypsum Company*, —— U.S. ——, ——, 115 S.Ct. 2091, 2095, 132 L.Ed.2d 148 (1995). "[A]n award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred." *Id.* at ——, 115 S.Ct. at 2096. "Prejudgment interest is not awarded as a penalty, it is merely an element of just compensation." *Id.* The Court held that: "neither a good-faith dispute over liability nor the existence of mutual fault justifies the denial of prejudgment interest in an admiralty collision case." *Id.* at ——, 115 S.Ct. at 2097. The Supreme Court made no recommendations concerning the calculation of interest.

## III. *PREJUDGMENT INTEREST RATE*

### A. RATE

No federal statute sets the "rate of prejudgment interest in an admiralty case. Therefore, the rate of prejudgment interest is governed by traditional judge-made principles." *City of Milwaukee v. Cement Division, National Gypsum Company*, —— U.S. ——, ——, 115 S.Ct. 2091, 2095, 132 L.Ed.2d 148 (1995). Although the parties to this case

offer multiple methods of rate calculation, the essential dispute is over whether to award prejudgment interest at the prime rate, as calculated by the Plaintiffs, or whether to award prejudgment interest at the City's short term borrowing rate.

In several recent decisions the Seventh Circuit has decided that, unless a court engages in refined rate-setting, tailored specifically to the facts of the case at hand, the prime rate (the rate banks charge for short term unsecured loans to creditworthy customers) should be used because it is most nearly reflective of the market rate. *See Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 274 (7th Cir.1993); *In re Oil Spill by the AMOCO CADIZ off the Coast of France on March 16, 1978*, 954 F.2d 1279, 1332 (7th Cir.1992) (per curiam); *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 437 (7th Cir.1989). Other circuits are in agreement. *See, e.g., Forman v. Korean Air Lines Company, Ltd.*, 84 F.3d 446, 450 (D.C.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 582, 136 L.Ed.2d 513 (1996); *National Shipping Company of Saudi Arabia (NSCSA) v. Moran Mid–Atlantic Corporation*, 924 F.Supp. 1436, 1455 n. 13 (E.D.Va.1996). In *AMOCO CADIZ*, the Seventh Circuit explained that "[a]ny market interest rate reflects three things: the social return on investment (that is, the amount necessary to bid money away from other productive uses), the expected change in the value of money during the term of the loan (i.e., anticipated inflation), and the risk of nonpayment." *In re Oil Spill by the AMOCO CADIZ*, 954 F.2d at 1332. In *Gorenstein* the Seventh Circuit disapproved use of the postjudgment rate for prejudgment interest, *see Gorenstein*, 874 F.2d at 436–37, and in *AMOCO CADIZ* that court decided against using the United States Treasury Bill rate[4] on the ground that the treasury rate is the rate for safe securities and "an involuntary tort creditor is not safe." *In re Oil Spill by the AMOCO CADIZ*, 954 F.2d at 1332.

The choice of rates can be determined by deciding whether the Plaintiffs or the Defendant should be the focus of the calculation. In *AMOCO CADIZ* the Seventh Circuit said that: "The best estimate of these three variables [determining market rate interest] is the amount *the defendant* must pay for the money, which reflects variables specific to that entity." *In re Oil Spill by the AMOCO CADIZ*, 954 F.2d at 1332 (emphasis supplied). And, in the appeal of the instant case, the Seventh Circuit invited the court to consider the City's status as a municipality as a guide to setting the interest rate and suggested that the court could set the rate of interest to match that which lenders would charge the City for short-term unsecured loans. *See Cement Division National Gypsum Company v. City of Milwaukee*, 31 F.3d 581, 587 (7th Cir.1994), *aff'd*, —— U.S. ——, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995).

■ This guidance from the Seventh Circuit was offered before the United States Supreme Court placed the emphasis upon the full compensation for the victim in *City of Milwaukee v. Cement Division, National Gypsum Company*, —— U.S. ——, ——, 115 S.Ct. 2091, 2095, 132 L.Ed.2d 148 (1995). Having considered the creditworthiness of the City and the rate of its short-term borrowing, this court finds that setting a rate of prejudgment interest based on the City's cost of short-term borrowing would not result in full compensation for the Plaintiffs. There is a wide disparity between the interest rate proposed by the Plaintiffs and that proposed by the Defendant. In most tort cases in which prejudgment interest is at issue the parties are private, commercial entities which must borrow at market rates. In this case the Defendant is a municipality which does not compete on the same terms in exactly the same market as commercial entities. For reasons which are not fully explained in the record, the City is able to borrow at much lower rates.

---

**4.** The Ninth Circuit enlists a presumption in favor of using the Treasury Bill rate in the context of prejudgment interest. *See, e.g., Saavedra v. Korean Air Lines Company*, 93 F.3d 547, 555 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct.

584, 136 L.Ed.2d 514 (1996); *MHC, Inc. v. Oregon Department of Revenue*, 66 F.3d 1082, 1090 (9th Cir.1995). *See also ETS Gustave Brunet, S.A. v. M.V. NEDLLOYD ROSARIO*, 929 F.Supp. 694, 714 (S.D.N.Y.1996).

In *Gorenstein* and *AMOCO CADIZ* the Seventh Circuit decided that the Treasury Bill rate was too low to compensate the Plaintiff fully. *See Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 437 (7th Cir.1989); *In re Oil Spill by the AMOCO CADIZ off the Coast of France on March 16, 1978*, 954 F.2d 1279, 1332 (7th Cir.1992). Likewise, in this case, the City's borrowing rate is too low to make the Plaintiffs whole. The Plaintiffs have made a showing that their actual cost of borrowing during the prejudgment period was higher than the prime rate, so using the lower prime rate takes into account the favorable credit rating of the City. For these reasons, the court will award prejudgment interest calculated at the prime rate.

## B. TAX EFFECT

Next, the City argues that any award of prejudgment interest should be reduced to account for state and federal income taxes the Plaintiffs might have paid on earned interest had they loaned the principal amount to the City for the period in question. The sole authority cited by the City for this novel proposal is Professor Knoll's article. The court's own research has uncovered no reported cases suggesting or supporting a deduction for taxes.[5] Courts in this district calculate prejudgment interest without regard to any tax effect. *See, e.g., Paper Converting Machine Company v. Magna–Graphics Corporation*, 576 F.Supp. 967, 979 (E.D.Wis.1983), *aff'd in part, vacated in part on other grounds*, 745 F.2d 11 (Fed.Cir.1984).

Theoretically, a deduction for taxes which would have been paid would result in a more accurate calculation. However, any attempt to calculate taxes would be fraught with complex evidentiary problems and would inevitably lead to speculation. The record here is factually insufficient to determine what amounts the Plaintiffs would actually have paid to federal or state taxing authorities. The City admits that it does not know anything about the tax rates applicable to the Plaintiffs or even if any of the Plaintiffs would be liable for federal or Wisconsin taxes. *See* Brief of the City of Milwaukee at 20 & n. 9.

The City, however, is undeterred by its inability to calculate what the Plaintiffs would have actually paid in taxes if they had loaned the City the principal amount of the judgment for the period in question. Instead, the Defendant points out that, as a municipality, it is not subject to taxes and, therefore, prejudgment interest paid by the City is not deductible by the City. *See* Brief of the City of Milwaukee at 19. Given this situation, the City complains that: "If prejudgment interest is awarded at the taxable rate, . . . the City will be required to pay more interest in real dollars than defendants able to deduct such payments." *Id.* The City argues that "the court must weigh the goal of compensating the plaintiff, against the unfairness of requiring tax exempt entities (which encompass not only governmental entities, but also charitable institutions) to pay substantially more in prejudgment interest than for profit institutions." *Id.* at 20.

■ The Seventh Circuit's mandate contained no suggestion for deducting taxes from the prejudgment interest. Therefore, in the absence of any significant legal or factual support for this proposal, the court will not attempt to subtract any amount for taxes from the award of prejudgment interest. The court will leave the taxing authorities to collect any taxes which the Plaintiffs incur by being awarded prejudgment interest.

## IV. COMPOUNDING

After ruling that the Plaintiffs in this case should receive prejudgment interest, the Seventh Circuit said that "whether to award compound interest . . . is a determination better left to the discretion of the district court." *Cement Division, National Gypsum Company v. City of Milwaukee*, 31 F.3d 581, 587 (7th Cir.1994), *aff'd*, —— U.S. ——, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). The Plaintiffs ask that the prejudgment interest

---

**5.** Recently, the Supreme Court declined to address the issue of whether prejudgment interest is taxable. *See Brabson v. United States*, 73 F.3d 1040 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 607, 136 L.Ed.2d 533 (1996).

be compounded annually. This would comport with the award made in *In re Oil Spill by the AMOCO CADIZ off the Coast of France on March 16, 1978,* 954 F.2d 1279, 1337 (7th Cir.1992) (per curiam), where the Seventh Circuit awarded prejudgment interest at the prime rate compounded annually.

The City partially agrees with this position. It calculates its suggested awards by compounding the interest, but the City objects to compounding a higher rate, such as the prime rate, on the ground that such a rate "would no longer reflect the City's short term borrowing cost." Brief of the City of Milwaukee at 25.

The City's expert, Professor Knoll, suggests that, in order to compensate the injured party fully, "the calculation of interest on a judgment should use the same compounding period that is used with the stated interest rate. If not, the court is not using the reference interest rate but a different rate to calculate interest." Michael S. Knoll, "A Primer on Prejudgment Interest" (draft August 24, 1995) at 49 (citations omitted). Knoll points out that in *AMOCO CADIZ* the Seventh Circuit did award prejudgment interest at the prime rate compounded annually, but did not take into account the practice that prime rate loans typically call for quarterly payments. *See Id.*

■ Although the issue of whether to award compound prejudgment interest is left to the discretion of the district court, *see Gorenstein Enterprises, Inc. v. Quality Care–USA,* 874 F.2d 431, 437 (7th Cir.1989), the Seventh Circuit has declared that "compound interest is the norm in federal litigation." *In re Oil Spill by the AMOCO CADIZ,* 954 F.2d at 1332. This court sees no reason to depart from the norm in the instant case. Compound interest must be awarded in order to achieve the goal of fully compensating the Plaintiffs because the prejudgment interest was not paid as it accrued. It has been retained by the Defendant which would profit from its wrongful behavior if the interest is not compounded. Here, both sides agree that if the interest is compounded, the compounding should occur on an annual basis. Even though quarterly compounding could be justified, the court will not exceed the Plaintiffs' request. As a result, the Plaintiffs will be awarded prejudgment interest at the prime rate, compounded annually.

## V.´ POSTJUDGMENT INTEREST

■ The parties agree that postjudgment interest should be awarded on the prejudgment interest. This position is well-established in the Courts of Appeals. *See e.g., Air Separation, Inc. v. Underwriters at Lloyd's of London,* 45 F.3d 288, 290–91 (9th Cir. 1995); *Quesinberry v. Life Insurance Company of North America,* 987 F.2d 1017, 1030 (4th Cir.1993) (en banc); *Fuchs v. Lifetime Doors, Inc.,* 939 F.2d 1275, 1280 (5th Cir. 1991); *Arthur Young & Company v. Reves,* 937 F.2d 1310, 1338 (8th Cir.1991), *aff'd sub nom. Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Parsons & Whittemore Alabama Machinery and Services Corporation v. Yeargin Construction Company, Inc.,* 744 F.2d 1482, 1485 (11th Cir.1984); *United States v. Hannon,* 728 F.2d 142, 145 (2d Cir.1984). An award of postjudgment interest on an underlying award of prejudgment interest does not constitute impermissible compounding of interest on the debt as barred by *Cherokee Nation v. United States,* 270 U.S. 476, 490, 46 S.Ct. 428, 433, 70 L.Ed. 694 (1926). *See Air Separation,* 45 F.3d at 291 n. 2.

The disagreement between the Plaintiffs and the City is over the date upon which prejudgment interest ends and postjudgment interest begins. Initially, the Plaintiffs asked for prejudgment interest up to the date of the judgment entered on December 4, 1992. The City argued that no postjudgment should have accrued after the entry of the 1992 judgment because the principal was paid on that date and the amount of prejudgment interest had not been determined. The Plaintiffs now maintain that, following the City's reasoning, prejudgment interest should be paid until the date this court enters judgment awarding a specific amount of prejudgment interest.

■ In *Kaiser Aluminum & Chemical Corporation v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Su-

preme Court, ruling in a case in which there had been multiple judgments and appeals, ruled that postjudgment interest should be calculated from the date of the entry of the judgment which ascertained the full amount of damages in a meaningful way. *See Id.* at 836, 110 S.Ct. at 1576. In the instant case, this court's 1992 judgment was legally incorrect in that it denied prejudgment interest altogether. That part of the judgment was reversed and an amended judgment must be entered after prejudgment interest is calculated. Therefore, in the absence of any mandate to the contrary from the Seventh Circuit, *see* Federal Rule of Appellate Procedure 37, prejudgment interest will run until the date of the entry of this amended judgment. The court will direct the Clerk of Court to calculate postjudgment interest at the rate specified in 28 U.S.C. § 1961 from the date of the amended judgment on any unsatisfied portion of the judgment. *See Kaiser Aluminum,* 494 U.S. at 834–36, 110 S.Ct. at 1575–76; *American Telephone and Telegraph Company v. United Computer Systems, Inc.,* 98 F.3d 1206, 1209–11 (9th Cir.1996); *DeLong Equipment Company v. Washington Mills Electro Minerals Corporation,* 997 F.2d 1340, 1342 (11th Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *FDIC v. Rocket Oil Company,* 865 F.2d 1158, 1161 (10th Cir.1989). The Clerk will also be directed to tax costs and postjudgment interest will be imposed on the taxed costs. *See Devex Corporation v. General Motors Corporation,* 749 F.2d 1020, 1026 (3d Cir.1984), *cert. denied, sub nom. Technograph, Inc. v. General Motors Corporation,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); *Harris v. Chicago Great Western Railroad,* 197 F.2d 829, 836 (7th Cir.1952).

## ORDER

For these reasons, the court ORDERS that, on or before January 15, 1997, the Plaintiffs shall calculate the amount of prejudgment interest due on the principal amount of $1,677,541.86 by using the prime rate for the period from the date of the injury (December 24, 1979) through the date of the entry of judgment, which will occur on January 31, 1997, compounded annually. Within five days of the Plaintiffs serving the

Defendant with their calculation of interest, the parties shall meet to stipulate to the accuracy of the computation. This stipulation shall be submitted to the court on or before January 27, 1997. The court will enter judgment on January 31, 1997.